UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SCOTT ANDERSON HALL,
a/k/a Anderson Scott Hall,

    Petitioner,

vs.      Case No.   3:18-cv-147-J-32PDB
                 3:13-cr-15-J-32PDB

UNITED STATES OF AMERICA,

    Respondent.

## ORDER

  This case is before the Court on Petitioner Scott Anderson Hall's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1, § 2255 Motion)[1] and Supporting Memorandum (Civ. Doc. 2, § 2255 Memorandum). Petitioner raises four claims of ineffective assistance of counsel pertaining to sentencing or direct appeal. The United States has responded in opposition. (Civ. Doc. 8, Response). Petitioner did not file a reply. Thus, the matter is ripe for a decision.

  Under Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the motion. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing on a § 2255 motion is not required when the petitioner asserts allegations that are

---

[1]  Citations to the record in the criminal case, United States vs. Scott Anderson Hall, No. 3:13-cr-15-J-32PDB, will be denoted "Crim. Doc. __." Citations to the record in the civil § 2255 case, No. 3:18-cv-147-J-32PDB, will be denoted "Civ. Doc. __." The Court will cite the page number designated by CM/ECF.

1

affirmatively contradicted by the record or patently frivolous, or if in assuming that the facts he alleges are true, he still would not be entitled to any relief). For the reasons set forth below, Petitioner's § 2255 Motion is due to be denied.

## I. Background

On June 26, 2013, a federal grand jury returned a 34-count superseding indictment against Petitioner. (Crim. Doc. 34, Superseding Indictment). The charges stemmed from a long-running Ponzi scheme, in which Petitioner convinced dozens of victims to entrust him with their retirement savings by promising a 12% annual return on investment. (Crim. Doc. 62, Plea Agreement at 20-26). In fact, Petitioner used the victims' money to pay personal expenses, purchase commercial property, and buy luxury cars. By the time he was caught, Petitioner had stolen more than $3 million of retirement funds from public school teachers and administrators, nurses, and other victims. Counts One through Eleven of the Superseding Indictment charged Petitioner with mail fraud, in violation of 18 U.S.C. §§ 1341 and 2. Counts Twelve through Twenty-Four charged Petitioner with wire fraud, in violation of 18 U.S.C. §§ 1343 and 2. Finally, Counts Twenty-Five through Thirty-Four charged Petitioner with money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 2.

Pursuant to a written plea agreement, Petitioner pled guilty to two counts of mail fraud (Counts Eight and Eleven), one count of wire fraud (Count Seventeen), and one count of money laundering (Count Twenty-Five). (Crim. Doc. 62). The magistrate judge who presided over the change-of-plea hearing recommended that Petitioner's "plea was both knowledgeable and voluntary, and that the facts that he admitted

establish the elements of the charged offense." (Crim. Doc. 63, Report and Recommendation Concerning Guilty Plea). The Court accepted Petitioner's guilty plea and adjudicated him accordingly. (Crim. Doc. 66, Acceptance of Plea).

According to the Presentence Investigation Report (PSR), Petitioner's advisory sentencing range under the United States Sentencing Guidelines was 108 to 135 months in prison, based on a total offense level of 31 and a Criminal History Category of I. (Crim. Doc. 118, PSR at ¶ 100). The total offense level included an 18-level enhancement under § 2B1.1(b)(1)(J) because the loss was more than $2.5 million but not more than $7 million ($3,118,811.71 to be exact according to the PSR), and a 2-level vulnerable victim enhancement under § 3A1.1(b)(1) because two of the victims were grieving the loss of a spouse when Petitioner defrauded them. (Crim. Doc. 118 at ¶¶ 54, 57).

Petitioner's sentencing counsel, Charles Truncale, objected to the PSR, contesting in particular the loss amount and the 2-level vulnerable victim enhancement. (Crim. Doc. 118 at 26-34, Addendum to PSR). Mr. Truncale also submitted a sentencing memorandum that advocated for a downward variance based on the sentencing factors in 18 U.S.C. § 3553(a). (Crim. Doc. 120, Petitioner's Sentencing Memorandum). Attached to Petitioner's Sentencing Memorandum were the following: an exhibit outlining Petitioner's challenge to the loss amount (Crim. Doc. 120-1), a "Comprehensive Sentencing Mitigation Report" prepared by Mr. Carlos Dawson, a retired United States probation officer (Crim. Doc. 120-2), and eight letters in support of Petitioner (Crim. Doc. 120-3).

The sentencing hearing occurred over the course of March 30, 2015 (Crim. Doc. 151, Sentencing Transcript Vol. I), and June 12, 2015 (Crim. Doc. 152, Sentencing Transcript Vol. II). As the Court noted, the two most significant issues were the loss amount and whether the vulnerable victim enhancement applied. (Crim. Doc. 151 at 6). The Court heard testimony from several witnesses for the government, including a forensic accountant for the FBI, four of Petitioner's victims, and the FBI agent who investigated the case. The Court also heard statements from several of Petitioner's family members and friends. After hearing arguments about the Guidelines determination, the Court overruled Petitioner's objections to the loss amount and the vulnerable victim enhancement. (Crim. Doc. 152 at 79-83). The Court adopted the PSR's Guidelines calculation and determined that the advisory sentencing range was 108 to 135 months in prison. (Id. at 83). After hearing the parties' arguments about the § 3553(a) factors, the Court sentenced Petitioner to a mid-range term of 120 months in prison (concurrent for each count), followed by three years of supervised release. (Id. at 148); (Crim. Doc. 129, Judgment).

Petitioner appealed the sentence to the United States Court of Appeals for the Eleventh Circuit. Petitioner's appellate counsel, Calvin Rivers, ultimately filed a "corrected" Anders[2] brief and a motion to withdraw. United States v. Hall, No. 15–12842 (11th Cir.), Dkt. Entry of Aug. 15, 2016 ("Corrected Anders Brief"). The

---

[2] Anders v. California, 386 U.S. 738, 744 (1967) ("Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of [the record], he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal.").

4

Eleventh Circuit granted appellate counsel's motion to withdraw and affirmed Petitioner's sentence, writing:

> Our independent review of the entire record reveals that counsel's assessment of the relative merit of the appeal is correct. Because independent examination of the entire record reveals no arguable issue of merit, counsel's motion to withdraw is **GRANTED**, and Hall's convictions and total sentence are **AFFIRMED**.

United States v. Hall, 676 F. App'x 909, 910 (11th Cir. 2017).

Petitioner did not seek certiorari review. Petitioner then timely filed the instant § 2255 Motion, raising four claims of ineffective assistance of counsel pertaining to sentencing and direct appeal.

## II.   Discussion

Under Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamental as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered on collateral review. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both (1) that counsel's performance was deficient, and (2) that as a result of counsel's deficient performance, the petitioner suffered prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). In determining whether counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Id. To show that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Id. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

### A. Ground One: Whether sentencing counsel gave ineffective assistance by not calling certain witnesses

In Ground One, Petitioner claims that Mr. Truncale gave ineffective assistance at sentencing by not calling the "expert witness" who wrote the Sentencing Mitigation Report, Mr. Carlos Dawson. (Civ. Doc. 1 at 4; Civ. Doc. 2 at 16-18). Petitioner claims that the mitigation expert could have "cleared up any confusion about the [mitigation] report" concerning the average sentence for fraud defendants, which purportedly would have supported a lower sentence. (Civ. Doc. 1 at 4). Specifically, Petitioner contends that the mitigation expert "could have cleared up the amount that constitutes a conventional range for the 'heartland' of sentences imposed" in cases involving similar offenders with similar criminal history categories. (Civ. Doc. 2 at 17). Petitioner also claims that counsel was ineffective for not calling other unnamed witnesses, whom Petitioner claims "were long term clients" of his. (Civ. Doc. 1 at 4). Petitioner claims that such witnesses "could have rebutted the Government's assumption that [Petitioner's] business was a fraud from the beginning." (Id.). Petitioner maintains that he was prejudiced because, had counsel called these witnesses, he would have been sentenced closer to the low end of the Guidelines range (108 months) instead of 120 months.

Notably, Petitioner has not provided any affidavits from the uncalled witnesses to verify that they would have testified as he claims. Additionally, Petitioner does not identify any of the "long term clients" that he contends could have provided helpful testimony.

"Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).[3] "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it." Dingle v. Sec'y, Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) (quotations omitted). Thus, "[t]he mere fact that other witnesses might have been available ... is not a sufficient ground to prove ineffectiveness of counsel." Waters, 46 F.3d at 1514 (citation omitted). Additionally, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted) (cited by Estiven v. Sec'y, Dep't of Corr., No. 16-14056-D, 2017 WL 6606915, at *4 (11th Cir. Sep. 28, 2017) (order denying COA)).

Petitioner provides no affidavits to support his assertion that Mr. Dawson or the various unnamed "clients" would have testified as he suggests. Petitioner can only

---

[3] Decisions of the former Fifth Circuit Court of Appeals that were issued on or before September 30, 1981 are binding in the Eleventh Circuit Court of Appeals. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981).

postulate that the uncalled witnesses' testimony would have supported a lower sentence. However, "speculation that the missing witnesses would have been helpful" "is 'insufficient to carry the burden of a habeas corpus petitioner.'" Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001) (quoting Aldrich v. Wainwright, 777 F.2d 630, 636 (11th Cir. 1985)). Because Petitioner's "self-serving speculation" about what the uncalled witnesses would have testified "will not sustain an ineffective assistance claim," Ashimi, 932 F.2d at 650, Petitioner's claim fails to show that counsel's decision not to call Mr. Dawson or the anonymous "clients" was deficient or prejudicial.

Moreover, while Petitioner asserts that Mr. Dawson could have "cleared up any confusion" about the average sentence for fraud defendants (Civ. Doc. 1 at 4), there was no confusion on the issue. In Petitioner's Sentencing Memorandum (Crim. Doc. 120 at 9-12) and Sentencing Mitigation Report (Crim. Doc. 120-2 at 14-15), Petitioner offered a variety of statistics about the average sentences for fraud defendants, and argued that a sentence within the Guidelines range would exceed the heartland of sentences imposed for similar offenses and loss amounts. After extended discussion (Crim. Doc. 152 at 106-25), ultimately, the Court assumed that the statistics provided by Petitioner were correct and that those statistics should be taken into account (id. at 136-37), but determined they did not support a downward variance.

Therefore, the record shows that there was no confusion about the sentencing statistics provided in Mr. Dawson's Sentencing Mitigation Report. The Court was able to digest the numbers and determine how much weight to give the data in determining

Petitioner's sentence. Petitioner does not provide any evidence – such as an affidavit from Mr. Dawson – suggesting that Mr. Dawson could have provided testimony that would have led the Court to a different understanding.

Simply put, there is not a reasonable likelihood that testimony from Mr. Dawson or Petitioner's unnamed "clients" would have caused the Court to impose a lesser sentence. Thus, Petitioner's counsel was not ineffective for failing to call the witnesses. The record refutes Petitioner's allegations of ineffective assistance in Ground One, and relief on this ground is due to be denied.

### B. Ground Two: Whether sentencing counsel and appellate counsel gave ineffective assistance by not challenging the reasonableness of Petitioner's sentence

Petitioner claims that sentencing counsel (Mr. Truncale) and appellate counsel (Mr. Rivers) gave ineffective assistance by failing to challenge the reasonableness of Petitioner's sentence. (Civ. Doc. 1 at 5). Petitioner asserts they "both failed to argue about the mandatory maximum sentence instead of the lowest sentence that he could have received, due to his criminal history and his age, all factors of § 3553(a)." (Id.; see also Civ. Doc. 2 at 18-20). Petitioner also claims that the Court failed to consider all of the sentencing factors under 18 U.S.C. § 3553(a) because neither sentencing counsel nor appellate counsel "ask[ed] for those factors to be used." (Civ. Doc. 2 at 20).

It is unclear what Petitioner means when he claims that sentencing counsel and appellate counsel "both failed to argue about the mandatory maximum sentence instead of the lowest sentence that he could have received…" (Civ. Doc. 1 at 5). It is also unclear whether Petitioner alleges that counsel failed to challenge the procedural

reasonableness of the sentence or the substantive reasonableness of the sentence. However, because Petitioner claims that the Court failed to consider the § 3553(a) factors, and that counsel failed to advocate the use of those factors, Petitioner's claim is best framed as asserting that counsel failed to challenge the procedural reasonableness of the sentence. See United States v. Gonzalez, 550 F.3d 1319, 1323 (11th Cir. 2008) ("A sentence may be procedurally unreasonable if the district court … fails to consider the appropriate statutory factors … or fails to adequately explain the chosen sentence.").

All the same, the record refutes Petitioner's claim that his attorneys failed to challenge the reasonableness of the sentence or failed to argue the § 3553(a) factors. Contrary to Petitioner's allegations, Mr. Truncale devoted nearly 13 pages of his sentencing memorandum to arguing that the § 3553(a) factors supported a downward variance from the Guidelines range. (Crim. Doc. 120 at 6-19). Mr. Truncale emphasized the non-violent nature of the offense and Petitioner's lack of criminal history, see § 3553(a)(1), the alleged improbability of Petitioner reoffending, such that a significant sentence was unnecessary to deter Petitioner or to protect the public, see §§ 3553(a)(2)(B)-(C), and the need to avoid unwarranted sentencing disparities, § 3553(a)(6). Likewise, Mr. Truncale retained Mr. Dawson – a retired United States Probation Officer – to prepare a Sentencing Mitigation Report that also contained a § 3553(a) analysis advocating for a downward variance. (See Crim. Doc. 120-2). Mr. Truncale further submitted letters of support from eight individuals, reflecting the degree of community support for Petitioner. (Crim. Doc. 120-3).

At the sentencing hearing, Mr. Truncale continued to argue that the § 3553(a) factors supported a downward variance. (Crim. Doc. 152 at 101-25). Mr. Truncale also brought forth eleven people to make statements on behalf of Petitioner, including Petitioner's wife and three children, his father, brother, and sister, as well as several friends from Petitioner's church. (Crim. Doc. 151 at 169-202). Thus, the record shows that in his written submissions and sentencing presentation, Mr. Truncale advocated a lower sentence based on the § 3553(a) factors. Although the Court did not grant a variance, the 120-month prison sentence imposed was closer to the low end of the Guidelines range (108 months) than to the high end of the Guidelines range (135 months). The 10-year prison sentence was half the 20-year maximum sentence Petitioner could have received for any one of the counts of conviction, and one-eighth the 80-year cumulative maximum sentence he could have received. (See Crim. Doc. 62 at 2-3) (setting forth the maximum penalties).

When the Court explained the 120-month sentence, it did so in the context of applying the § 3553(a) factors. (Crim. Doc. 152 at 135-48). The Court spent the most time describing the nature and circumstances of the offense and the characteristics of Petitioner. (Crim. Doc. 152 at 138-45); accord 18 U.S.C. § 3553(a)(1). But the Court also noted the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public. (Crim. Doc. 152 at 146-47); accord 18 U.S.C. § 3553(a)(2). The Court observed the kinds of sentences available, the Guidelines' recommendation (including a pending Guidelines amendment), and the need to avoid unwarranted sentencing

disparities. (Crim. Doc. 152 at 135-38, 147-48); accord 18 U.S.C. §§ 3553(a)(3)-(6). Before announcing the sentence, the Court recognized the need for the sentence to be "sufficient but not greater than necessary to meet all of these criteria." (Crim. Doc. 152 at 147); accord 18 U.S.C. § 3553(a). Finally, the Court considered the need to provide restitution to the victims. (Crim. Doc. 152 at 149-50); accord 18 U.S.C. § 3553(a)(7). Thus, the record reflects that the Court considered each of the § 3553(a) factors in imposing the sentence. The record affirmatively contradicts Petitioner's claim that sentencing counsel failed to advocate the use of the § 3553(a) factors or that the Court failed to consider them.

Similarly, the record refutes Petitioner's allegation that appellate counsel, Mr. Rivers, gave ineffective assistance by not challenging the reasonableness of Petitioner's sentence. First, Petitioner's Plea Agreement contained an appeal-waiver, in which he waived the right to appeal his sentence "on any ground" except under limited circumstances. (Crim. Doc. 62 at 12-13). A claim that a within-Guidelines sentence was procedurally (or substantively) unreasonable was not exempt from that waiver. As such, appellate counsel had no obligation to raise a claim that was barred by the Plea Agreement. Nevertheless, in his Corrected Anders Brief, appellate counsel evaluated (1) whether Petitioner's appeal-waiver was knowing and voluntary and (2) whether the sentence was substantively or procedurally unreasonable. Corrected Anders Brief at CM/ECF pp. 24-29. Appellate counsel concluded that Petitioner's appeal-waiver was valid and that his sentence was reasonable. After an independent examination of the record, the Eleventh Circuit Court of Appeals concluded "that

counsel's assessment of the relative merit of the appeal is correct" and affirmed Petitioner's sentence. Hall, 676 F. App'x at 910. The record and the opinion on direct appeal thus refute Petitioner's allegation that appellate counsel was ineffective for failing to challenge the reasonableness of his sentence.

As such, the record affirmatively refutes each of Petitioner's allegations in Ground Two. Relief on this ground is due to be denied.

### C. Ground Three: Whether sentencing counsel was unprepared for the sentencing hearing

Next, Petitioner asserts that Mr. Truncale was unprepared for sentencing "because [counsel] forgot to bring his paperwork that he needed to argue for the lowest sentence instead of the highest sentence." (Civ. Doc. 1 at 6). Petitioner does not offer much elaboration in the § 2255 Memorandum. There, Petitioner states only that "counsel was not ready for sentencing" because he "did not have a copy of the sentencing memorandum. This clearly altered the outcome of the sentence Hall received, and Hall believes that this also prejudice[d] him and left him at the highest end of the sentencing guideline range." (Civ. Doc. 2 at 20). Beyond this conclusory allegation, Petitioner does not describe how Petitioner's sentence was affected.

In its Response, the United States rightly characterizes this claim as frivolous. (Civ. Doc. 8 at 19). Petitioner bases this claim on a moment during the second day of sentencing when counsel, Mr. Truncale, needed a small amount of time to locate his sentencing memorandum. (Crim. Doc. 152 at 59-60). To save time, the Court offered its copy to Mr. Truncale, which Mr. Truncale accepted. Mr. Truncale proceeded to ably argue objections to the Guidelines calculation and to advocate a downward variance

under § 3553(a), demonstrating his preparedness for sentencing. (Id. at 60-71, 101-25). "Hall's complaint on this issue is based entirely on the fact that, during a two day sentencing hearing with numerous documents and exhibits, … Mr. Truncale needed a moment to put his hands on his sentencing memorandum, which he acknowledged he had with him." (Civ. Doc. 8 at 19). But as the United States correctly observes, this situation "is not uncommon with both trial counsel and prosecutors." (Id.).

Nothing about counsel's brief inability to locate his sentencing memorandum, where counsel proceeded to ably advocate on Petitioner's behalf, establishes that counsel's performance was either deficient or prejudicial under Strickland. Petitioner's conclusory allegation of ineffective assistance in Ground Three does not merit relief.

### D. Ground Four: Whether appellate counsel gave ineffective assistance by filing an Anders brief

Finally, Petitioner alleges that appellate counsel gave ineffective assistance because he filed an appellate brief and motion to withdraw under Anders v. California, 386 U.S. 738 (1967), and because the Eleventh Circuit denied appellate counsel's first Anders brief. (Civ. Doc. 1 at 8; Civ. Doc. 2 at 20-22). Petitioner suggests that instead of filing an Anders brief, counsel should have argued that his guilty plea was involuntary because the prosecutor allegedly threatened him with deportation. (Civ. Doc. 2 at 22). Petitioner also makes an assertion that appellate counsel owed him back rent (id. at 20), but this undeveloped allegation is too conclusory to merit further review. Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) ("A petitioner is not entitled to an evidentiary hearing, however, when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the

record are wholly incredible.") (emphasis in original) (internal quotation marks and citation omitted).

After the sentencing hearing, the Court appointed Mr. Rivers to represent Petitioner on appeal. Mr. Rivers filed an initial <u>Anders</u> brief in which he suggested there were no arguable issues of merit, but in which he also stated that Petitioner's appeal-waiver was arguably invalid and that his sentence was arguably unreasonable. <u>United States v. Hall</u>, No. 15–12842 (11th Cir.), Dkt. Entry of Jan. 27, 2016 ("Initial <u>Anders</u> Brief"). The Eleventh Circuit rejected the Initial <u>Anders</u> Brief, writing:

> [C]ounsel makes contradictory statements, first stating that there are arguable issues on appeal, and then that those issues are not meritorious. He then states that there are no viable appellate issues. In the <u>Anders</u> brief's preliminary statement, counsel states that he is unable to argue either that the court committed reversible error or that an appeal exists on meritorious grounds. He then suggests that the issues presented are arguable issues that could possibly be raised on appeal.

<u>Hall</u>, No. 15–12842, Dkt. Entry of Jun. 13, 2016, at 1-2 (USCA Order Denying Initial <u>Anders</u> Brief). The Eleventh Circuit directed counsel "to submit either a merits brief or a compliant <u>Anders</u> brief discussing any irregularities and explaining, without ambiguity, why they do not present arguable issues on appeal." <u>Id.</u> at 3.

Following the rejection of the Initial <u>Anders</u> Brief, appellate counsel submitted a Corrected <u>Anders</u> Brief, in which he evaluated whether Petitioner's appeal waiver was valid and whether the sentence was reasonable. Corrected <u>Anders</u> Brief at CM/ECF pp. 24-29. Appellate counsel concluded that Petitioner's appeal waiver was knowing and voluntary, that his sentence was procedurally and substantively reasonable, and that there were no other arguable issues of merit. <u>Id.</u> Based on an

independent review of the record, the Eleventh Circuit agreed with counsel's assessment of the merits, granted counsel's motion to withdraw, and affirmed Petitioner's sentence. Hall, 676 F. App'x at 910.

An appellate lawyer's "role as advocate requires that he support his client's appeal to the best of his ability." Anders, 386 U.S. at 744. But an attorney "is [also] under an ethical obligation to refuse to prosecute a frivolous appeal." McCoy v. Ct. of App. of Wisconsin, Dist. 1, 486 U.S. 429, 436 (1988) (footnote omitted). Thus, under the procedures set out in Anders v. California, "if [appellate] counsel finds his case to be wholly frivolous, after a conscientious examination of [the record], he should so advise the court and request permission to withdraw." 386 U.S. at 744.

> That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

Id. An appellate lawyer who files a compliant Anders brief, even if only marginally compliant, does not render ineffective assistance. Grubbs v. Singletary, 120 F.3d 1174, 1177 (11th Cir. 1997) ("Although the brief may have only marginally complied with Anders, it nonetheless complied. We conclude, therefore, that the district court erred in granting Grubbs relief on his claim of ineffective assistance of appellate counsel in failing to comply with Anders.").

Here, appellate counsel complied with Anders when he filed the Corrected Anders Brief to address the Eleventh Circuit's rejection of the Initial Anders Brief. Upon review of the Corrected Anders Brief and the record, the Eleventh Circuit agreed with appellate counsel's assessment of the merits and affirmed Petitioner's sentence. Hall, 676 F. App'x at 910. Thus, even if appellate counsel erred in filing the deficient Initial Anders Brief, he remedied any errors by filing a satisfactory Corrected Anders Brief. That the Eleventh Circuit agreed there were no arguable issues of merit, following its own examination of the record, confirms that appellate counsel did not perform unreasonably in filing the Corrected Anders Brief.

Petitioner suggests that appellate counsel should have argued that his guilty plea was involuntary because the prosecutor threatened him with deportation. (Civ. Doc. 2 at 22). However, the record refutes such an allegation. Petitioner stated under oath at the change-of-plea hearing that nobody had threatened, forced, coerced, or intimidated him in any way regarding his decision to plead guilty. (Crim. Doc. 113, Plea Transcript at 69). Petitioner made the same assurance when he signed the Plea Agreement. (Crim. Doc. 62 at 14). The magistrate judge who presided over the plea colloquy recommended that Petitioner voluntarily pled guilty (Crim. Doc. 63), and Petitioner neither objected to that recommendation nor moved to withdraw his guilty plea. Thus, appellate counsel had no arguable basis for raising such a challenge to the validity of Petitioner's plea of guilty.

Accordingly, the record shows that appellate counsel's decision to file an Anders brief was neither unreasonable nor prejudicial under Strickland. As the Eleventh

Circuit determined, there was no arguable basis for relief. Petitioner's claim of ineffective assistance under Ground Four is without merit and is due to be denied.

### III. Conclusion

The Court has considered each of Petitioner's claims for relief on the merits, but finds that none warrants relief under 28 U.S.C. § 2255. Therefore, it is hereby **ORDERED:**

1. Petitioner Scott Anderson Hall's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.
2. The Clerk shall enter judgment in favor of the United States and against Petitioner, and close the file.

**CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue… only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537

U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing in these circumstances. Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Jacksonville, Florida this 30th day of December, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

Lc 19
C:
Counsel of record
Pro se petitioner